IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JERMAINE T. BROWN                                    PLAINTIFF

v.                      No. 2:23-cv-98-DPM

JOHNNY CHEEK, in his official capacity
as Sheriff of the Arkansas County Sheriff
Department and PATRICIA SNYDER, in
her individual and official capacity as Jail
Administrator, Arkansas County Jail            DEFENDANTS

ORDER

Jermaine Brown spent about two and a half months at the Arkansas County Detention Center on a parole violation. He has sued the Arkansas County Sheriff and the jail administrator, bringing conditions of confinement and medical deliberate indifference claims. His first case making similar claims was dismissed without prejudice. *Doc. 43* in *Brown v. Snyder*, No. 2:20-cv-64-BSM (E.D. Ark. 18 April 2022). Preclusion is not argued. Here, jail administrator Patricia Snyder is sued in her individual and official capacities, while Sheriff Johnny Cheek is sued in his official capacity only. The defendants seek summary judgment; Brown wants a trial. The Court takes any genuine dispute of material fact in Brown's favor. *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018).

*

In 2020, Brown was held in the Arkansas County Detention Center between mid-February and early May. *Doc. 42 at 1*. Conditions were bad. There was mold in the showers. *Doc. 35-3 at 17*. There were rats—Brown saw two or three of them a day. *Doc. 35-3 at 23–24*. The drains in the shower and dayroom overflowed. Sewage and feces collected and stayed around the drains. Prisoners stood in it when they showered. Prisoners ate in the dayroom. *Doc. 35-3 at 16–17*. The smell was so offensive that Brown couldn't eat there. The jail was porous. Officers regularly supplied Brown with KFC and Popeye's chicken, food from Wendy's, and candy. He ate all this in his cell. *Doc. 35-3 at 69–70*. Brown testified that he lost thirty-eight pounds while in the jail. *Doc. 35-3 at 21–22*. A record of a mid-March hospital visit indicates that Brown was 6'2" and weighed 192 pounds. It also notes "Denies: change in weight[.]" *Doc. 35-1 at 119–20*. The sink in Brown's cell didn't have running water, plus the toilet leaked when it flushed. *Doc. 1 at 4*. The cells' temperature fell to sixty or sixty-five degrees at night, but the detainees weren't allowed to have extra clothes or blankets to keep warm. *Doc. 35-3 at 27*. At one point, the electricity went out for about seven days. *Doc. 35-3 at 26–27*.

Mondays, Wednesdays, and Fridays were cleaning days. *Doc. 35-3 at 25–26*. Brown says inmates were only given water, a mop, and a broom to clean the jail. They didn't get any cleaning solution for the

mold, sewage, or feces. *Doc. 35-3 at 24–26.* Jail administrator Snyder disagrees, saying that inmates were given a bucket with cleaning solution and bleach. *Doc. 35-2 at 2.* She also says that maintenance promptly fixed any plumbing problems at the jail, while Terminix treated it quarterly for vermin. *Ibid.* Brown doesn't dispute this pest control treatment. *Doc. 42 at 3.* For purposes of the motion, the Court credits Brown's testimony about the cleaning matters.

Brown also had medical issues at the jail. He has high blood pressure, managed by medication. *Doc. 35-3 at 35.* Brown's high blood pressure is in part due to a brain injury, which requires scheduled neurology treatments. *Ibid.* The jail regularly gave him his blood pressure medicine. *Doc. 35-3 at 41.* At one point, Brown had an incident during which his blood pressure spiked. *Doc. 35-1 at 82–83 & Doc. 35-3 at 53–57.* He was all right the next morning. *Doc. 35-3 at 51.* After that, Brown began declining to take the pills that the jail gave him. He didn't recognize them, and said they were made by a different manufacturer than the ones he was used to. *Doc. 35-3 at 41–42 & 51.* Darrell Elkin, who manages jail medical care, examined Brown at the detention center. *Doc. 35-2 at 2 & Doc. 42 at 3.* He was also taken to Jefferson Regional Medical Center at least once. *Ibid.; Doc. 35-1 at 119–22.*

Brown says he submitted grievances about his conditions of confinement and his medical claims. *Doc. 35-3 at 7–8.* He also testified

that he spoke with Snyder many times about his medical issues and the jail's conditions. *Doc. 35-3 at 17, 37, & 69–70.* Snyder says that Brown didn't file any conditions of confinement grievances, or talk to her about his high blood pressure. *Doc. 35-2 at 2.*

\*

Three preliminaries.

*First,* Brown argues that summary judgment is premature because Sheriff Cheek and Snyder haven't been deposed yet. *Doc. 43 at 4.* Discovery closed in April 2025, three months before the defendants filed their motion for summary judgment. *Doc. 18 at 1 & Doc. 33.* No one asked to extend discovery or take any out-of-time deposition. His prematurity argument lacks merit.

*Second,* Brown brings claims under both the Eighth and Fourteenth Amendments, and analogous provisions in the Arkansas Constitution. ARK. CONST. art. II, §§ 2 & 9. Because he was detained on a parole violation, the Eighth Amendment and Section 9 of the Arkansas Constitution apply. *See, e.g., Doc. 43 at 4* in *Flowers v. Harrell,* No. 3:22-cv-178-JJV (E.D. Ark. 11 May 2023); *Grayson v. Ross,* 454 F.3d 802, 812 (8th Cir. 2006). This framework also covers his echoing Arkansas Civil Rights Act claim. Ark. Code Ann. § 16-123-105; *Harmon v. Payne,* 2020 Ark. 17, at 5–6, 592 S.W.3d 619, 623.

-4-

*Third*, Brown has abandoned his Fourth Amendment and freedom of speech claims. *Doc. 1 at 8 & 10.* His complaint didn't allege any facts about them. And the parties also didn't discuss them in the motion papers.

*

Brown's medical deliberate indifference claim fails as a matter of law. The Court assumes he told Snyder about his medical issues. Brown hasn't shown, though, that she disregarded his high blood pressure. *Jolly v. Knudsen*, 205 F.3d 1094, 1096–97 (8th Cir. 2000). The jail regularly gave him his medication. When his blood pressure spiked, jail employees took care of him; he doesn't say he suffered any adverse effects. After that, he refused to take the offered medicine. And Brown was seen by the jail medical manager, as well as taken to a doctor at least once. Viewing the record in Brown's favor on all disputed material facts, no reasonable juror could conclude that Snyder individually, or the jail, was deliberately indifferent to his high blood pressure. *Ibid.*

*

Next is Brown's conditions of confinement claim. Did he exhaust his administrative remedies, as required by the Prison Litigation

Reform Act?  42 U.S.C. § 1997e(a).  In his deposition, Brown testified he did.  In her affidavit, Snyder swore he didn't.  *Compare Doc. 35-2 at 2, with Doc. 35-3 at 7–8*.  A jury would have to decide this embedded fact question.  *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001).

Snyder also asserts qualified immunity.  To get to a jury on his conditions of confinement claim, Brown must offer evidence sufficient to support a verdict that Snyder violated his clearly established constitutional rights.  *Kelley v. Pruett*, No. 24-3084, slip op. at 5 (8th Cir. 8 January 2026).

The Eighth Amendment proscribes cruel and unusual punishments.  Jail conditions are punishment if they're extreme, depriving detainees the "minimal civilized measure of life's necessities."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotations omitted);  *Taylor v. Riojas*, 592 U.S. 7, 8 (2020) (*per curiam*).  Brown endured bad conditions—overflowing drains, mold, vermin, sewage around the dayroom drain, cold temperatures, and limited cleaning supplies.  But his claim can survive summary judgment only if a jury could reasonably conclude he was subjected to the most deplorable of conditions.  Harsh conditions are not sufficient.  *Compare Howard v. Adkison*, 887 F.2d 134, 136–37 (8th Cir. 1989) (punishment to confine inmate for two years in a cell covered in human waste), *with Smith v. Copeland*, 87 F.3d 265, 267–69 (8th Cir. 1996) (no punishment to be in a cell for four days with an overflowing toilet),

*Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (no clearly established right to be free from non-toxic mold), *and Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (no punishment when cells were sprayed monthly for vermin).

The Court must consider the totality of the circumstances. Duration and severity are both important. *Taylor*, 592 U.S. at 8-9; *Smith*, 87 F.3d at 268-69; *Simmons v. Cook*, 154 F.3d 805, 808 (8th Cir. 1998). Brown faced the whole situation for two and a half months. That's a while, but not a particularly lengthy period. *Compare Howard*, 887 F.2d at 137. Under precedent, much of what he endured — rats, mold, cold, overflowing drains, and limited cleaning supplies — was harsh, but not so extreme as to constitute punishment. *Compare Taylor*, 592 U.S. at 7-8 *and Fruit v. Norris*, 905 F.2d 1147, 1150-51 (8th Cir. 1990).

The sewage around the dayroom drain, and resulting smell, which prevented Brown from eating there, presents a closer issue. He lost thirty-eight pounds in about seventy days. That's significant. But he had access to contraband food from outside — KFC, Popeye's, and Wendy's. Snyder knew about this and questioned him about it "every day" after she discovered the issue. *Doc. 35-3 at 69*. And there's the mid-March hospital record indicating no weight loss, which Brown does not contest. This is not a situation where it was impossible for a detainee to eat and jail staff knew it. *E.g., Simmons*, 154 F.3d at 808. It's not a situation where a detainee went without any food or drink for

several days straight.  *E.g., Taylor*, 592 U.S. at 8.  It's not a situation where the detainee couldn't avoid sewage because it was all over the cell he couldn't leave.  *E.g., Howard*, 887 F.2d at 136.  While the feces around the dayroom drain made it impossible for Brown to eat there, resulting in a substantial weight loss, there was a flow of contraband food that he routinely ate in his cell.  Considering all the circumstances, no reasonable factfinder could conclude that Brown was punished by the jail's conditions in violation of the Eighth Amendment or Section 9 of the Arkansas Constitution.  *Smith*, 87 F.3d at 269.  He faced harsh conditions, but wasn't deprived of the "minimal civilized measure of life's necessities."  *Hudson*, 503 U.S. at 9.

\*

Because the Court concludes that Snyder didn't violate Brown's constitutional rights, his official capacity claims also fail.  *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007).  The parties didn't brief his common law negligence claims.  The Court declines to exercise supplemental jurisdiction over them.  Doc. 1 at 10;  28 U.S.C. § 1367(c)(3);  *McManemy v. Tierney*, 970 F.3d 1034, 1040–41 (8th Cir. 2020).  Brown's complaint will be dismissed.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

22 January 2026